[Cite as *State v. Edwards*, 2013-Ohio-239.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110773 |
| | | TRIAL NO. C-11CRB-30403 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| WOODROW W. EDWARDS III, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:   January 30, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Fox & Scott* and *Bradley Fox*, for Defendant-Appellant.

Please note:  we have removed this case from the accelerated calendar.

Per Curiam.

{¶1} Defendant-appellant Woodrow W. Edwards III appeals from his conviction for aggravated menacing. On appeal, he presents a single assignment of error, challenging the balance struck by the trial court in weighing the evidence adduced at trial. We affirm.

{¶2} *The evidence.* The aggravated-menacing charge stemmed from Edwards's encounter with Eric Taylor on September 29, 2011. Early that afternoon, Taylor and his coworker Joseph Ralls arrived at Ralls's house after completing their morning project. As the two men stood in the side yard talking with Ralls's father, Taylor saw a car that he recognized as belonging to his former girlfriend drive past the house, turn into a driveway across the street, return slowly past the house, and stop well short of the stop sign at the corner. Taylor approached the passenger side of the car, not realizing until he was upon it that it was operated not by his former girlfriend, but by a man whom Taylor did not know, but who he later learned was her current boyfriend, Edwards. In that instant, Taylor testified, Edwards lowered the passenger-side window, pointed a handgun at him, and asked if he had "a problem." Taylor, fearing that he would be shot, backed away into Ralls's yard and then, with the others, into Ralls's house. While the police were summoned, Taylor watched the car turn the corner and park for several minutes in front of the house. After the car drove away, Taylor drove to the police station to report the incident. On the way, he saw that the police had stopped the car, and he identified Edwards as the man who had pointed the gun at him.

{¶3} Edwards made a statement to the police and testified at trial. He stated that he had borrowed his girlfriend's car to visit his cousin, who had just

moved into Ralls's neighborhood. And he attributed his erratic driving to his inability to find his cousin's house. Edwards stated that, as he sat near the stop sign, trying to contact his cousin on his cell phone, he heard the handle on the rear passenger-side door "lift up and slam back down" and looked back to see "a stranger trying to let himself in[to] [his] vehicle." The doors were locked, the windows were up, the car was running, and the road was unobstructed. But Edwards had been "very much startled" by the sound and sight of Taylor at the door, and he "pretty much feared for [his] safety," because of his inability to "vouch for [Taylor] having good intentions, considering [he] did not know the guy," and because of "the violence you see and hear about on the news." Therefore, instead of driving away, Edwards "reached for [his] weapon," either partly or completely "pulled [his] pistol from its holster" (on this, his statement and testimony differ), "cracked the [passenger-side] window," and asked Taylor "what he was doing." Taylor, backing away from the car, explained that he "thought [Edwards] wanted something" and asked "what the pistol was for." Edwards responded, "You walked down on me." Taylor replied, "[M]y bad," and "walked away." Judging the situation to have been "de-escalated," Edwards pulled around the corner to allow a car to pass, stopped in front of the house until he had completed his phone call, and then drove away.

{¶4} *Self-defense presumption was rebutted.* R.C. 2903.21 proscribes the offense of aggravated menacing in relevant part as follows: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person * * * of the other person." At trial, Edwards conceded that his conduct satisfied the elements of aggravated menacing, but he asserted that he had acted in self-defense.

{¶5} Self-defense is an affirmative defense that legally excuses admitted criminal conduct. *State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973). The accused bears the burden of going forward with evidence of self-defense and the burden of proving by a preponderance of the evidence (1) that he was not at fault in creating the violent situation, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the force used, and (3) that he did not violate a duty to retreat or to avoid the danger. R.C. 2901.05(A); *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

{¶6} Ohio has long recognized an exception to the duty-to-retreat requirement of self-defense under what has come to be known as the "castle doctrine." This exception is founded upon the principle that a person's home is his castle, and thus a person assaulted in his home has no duty to retreat and "may use such means as are *necessary* to repel the assailant from the house, or to prevent his forcible entry, or material injury to his home, even to the taking of life." *State v. Peacock*, 40 Ohio St. 333, 334 (1883) (emphasis in original).

{¶7} In 2008, the Ohio General Assembly extended the castle doctrine beyond the accused's home to his "vehicle." *See* 2007 S.B. No. 184. Thus, R.C. 2901.09 effectively relieves the accused of the burden of proving the duty-to-retreat element of self-defense if he was "lawfully" in his "residence" or in his or "an immediate family member['s]" "vehicle." And R.C. 2901.05(B) shifts to the state the burden of production and proof on all three self-defense elements by establishing a presumption, rebuttable by a preponderance of evidence, that the accused acted in self-defense, if the accused "us[ed] defensive force that is intended or likely to cause

death or great bodily harm" against a person who was "in the process of unlawfully and without privilege to do so entering, or ha[d] unlawfully and without privilege to do so entered, the residence or vehicle occupied by the [accused]."

{¶8} Relevant to Edwards's claim of self defense, the accounts offered at trial by Edwards and by the state differed on whether Taylor had tried the car door: Edwards insisted that Taylor had, and that the sound and sight of Taylor's attempt to open the car had prompted his actions; Taylor and Ralls denied that Taylor had gotten close enough to touch the car. The trial court, in weighing the evidence, credited Edwards's written statement to the police that Taylor had tried the door and thus afforded Edwards the R.C. 2901.05 presumption that he had acted in self-defense. But the court went on to convict Edwards of aggravated menacing upon its finding that the state had successfully rebutted the presumption.

{¶9} The elements of self-defense are "cumulative" in the sense that the defense fails upon a failure of proof on any one element. *State v. Jackson,* 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986). It follows then, that when, as here, the victim is found to have been "in the process of unlawfully and without privilege to do so entering * * * [a] vehicle occupied by the [accused]," and thus R.C. 2901.05 gives rise to a presumption of self-defense and shifts the burden of production and proof to the state, self-defense will not excuse the accused's use of defensive force if the state proves by the greater weight of the evidence (1) that the accused was at fault in creating the violent situation, *or* (2) that he did not have a bona fide belief that he was in imminent danger of death or great bodily harm *or* that his only means of escape was the force used, *or* (3) that he violated a duty to retreat or to avoid the danger.

{¶10} Because the self-defense elements are cumulative, we do not, as Edwards would have us, reach the issue of whether R.C. 2901.09 operated to exempt Edwards from any duty to retreat. The trial court concluded that self-defense did not excuse Edwards's criminal conduct, because the court did not, under the circumstances, find credible Edwards's claim that he had acted upon a bona fide belief that he was in imminent danger of death or great bodily harm. From our review of the evidence, we cannot say that the trial court, in arriving at that conclusion, lost its way or created such a manifest miscarriage of justice that Edwards's aggravated-menacing conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶11} *We affirm.* We, therefore, hold that Edwards's aggravated-menacing conviction was not contrary to the manifest weight of the evidence. Accordingly, we overrule the assignment of error and affirm the judgment of the court below.

Judgment affirmed.

SUNDERMANN, P.J., HENDON and FISCHER, JJ.

J. HOWARD SUNDERMANN, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its own entry on the date of the release of this opinion.