[Cite as *State v. Eichelbrenner*, 2013-Ohio-1194.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110431 |
| | | TRIAL NO. B-1102105 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JAMES EICHELBRENNER, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  March 29, 2013


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Phillip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Joshua L. Goode*, for Defendant-Appellant.



Note: we have removed this case from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1} Defendant-appellant James Eichelbrenner appeals from the judgment of the Hamilton County Court of Common Pleas convicting him, after a jury trial, of felonious assault. Eichelbrenner argues that the trial court erred because it allowed the victim, Tabitha Toole, to testify to prior instances of bad conduct, and because it refused to instruct the jury on self-defense. He also contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶2} We conclude that Eichelbrenner invited any error with respect to Toole's prior-act testimony, that he was not entitled to a self-defense instruction, and that his conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, we affirm the trial court's judgment.

## I. Background Facts and Procedure

{¶3} After several hours of playing beer pong at his friend Chad Barber's house, Eichelbrenner and Toole had an argument that started after Eichelbrenner refused to give Toole the cellular phone that he used but that she had paid for. As the argument escalated, Eichelbrenner took from Toole her cellular phone and refused to give it back, even though Toole wished to leave Barber's house.

{¶4} Toole's attempt to take back her cellular phone led to a physical altercation. According to Toole, Eichelbrenner hit her several times in Barber's family room when she was balled up in a fetal position, and those blows left knots on her head. When Eichelbrenner became distracted by Barber, she fled outside to a neighbor's house to get help. Eichelbrenner chased her and grabbed her by her right shoulder as she reached the neighbor's porch, causing her to fall to the ground. Eichelbrenner then kicked and stomped on her while she cried and begged him to

2

stop. When he stopped, Toole could not feel her right arm. Eichelbrenner then helped her up and assisted her as she walked back to Barber's house. She again asked him for her cellular phone and he refused.

{¶5} Inside the house, Toole went into the bathroom and stayed there until Eichelbrenner passed out on a couch. She then extracted both cellular phones from his coat pocket and ran out of the house. She drove herself to the hospital, where she learned that her collarbone had been broken in two places.

{¶6} On cross-examination, Toole was asked if Barber had tried to break up the scuffle. She began her response by explaining that Barber "had witnessed prior events like this one—", but she was interrupted by defense counsel's objection. The court sustained the objection and instructed Toole not to answer the question.

{¶7} Defense counsel then clarified that he was only asking about the night in question and again inquired as to whether Barber had tried to pull Eichelbrenner off of her. Toole began her response with, "From prior experiences—", and she was again interrupted by defense counsel's objection. The trial court stated that defense counsel "probably shouldn't have asked that question."

{¶8} Before the court ruled on the objection, however, defense counsel told Toole to "go ahead." After defense counsel instructed her to finish answering, Toole stated that she assumed Barber had not stepped in based on "prior events, when he had seen [Eichelbrenner] hit me, [Barber] would never try to stop or get involved and stop it or try to get him to stop period. [Eichelbrenner] would just end up beating me worse." Defense counsel did not further object or move to strike this testimony, although he subsequently moved, unsuccessfully, for a mistrial based in part on this testimony.

{¶9} At all times Toole denied being the aggressor in the affray which began at Barber's house, but she admitted that she had scratched Eichelbrenner several times on his face to stop his assault on her. Officer Nicholas McCarthy from the Colerain Township Police Department, who arrested Eichelbrenner on the day of the incident, testified that Eichelbrenner indicated that his only injuries were on his face, which McCarthy observed to be superficial scratches.

{¶10} Eichelbrenner did not testify, but Barber testified on his behalf. Barber testified that he had only witnessed the altercation inside the house. He claimed that Toole had yanked Eichelbrenner out of a bed while screaming that she wanted the cellular phone back. Toole then followed Eichelbrenner into two bathrooms and then into the family room. There Barber had observed Toole scratching and hitting Eichelbrenner on his face. According to Barber, Eichelbrenner had repeatedly told Toole to stop, and when Eichelbrenner "got tired of it," he had pushed Toole to the family-room floor and kicked her in the shoulder once. Eichelbrenner then had gone outside, and Toole had chased after him.

{¶11} Barber first testified that he believed the altercation was based on Toole's desire to take from Eichelbrenner the cellular phone that he used but that she had paid for. But later he admitted that he may have misinterpreted the situation and that Toole could have been trying to retrieve her cellular phone from Eichelbrenner before leaving. Although he did not observe Eichelbrenner taking Toole's cellular phone from her, he corroborated Toole's testimony that she had retrieved her cellular phone from the sleeping Eichelbrenner.

{¶12} Eichelbrenner presented testimony from two other individuals, Carolyn Huddleston and Jennifer Finke, neither of whom had witnessed the assault. Huddleston, his sister, testified that, in her opinion, Toole is an untruthful person.

Huddleston also testified that she had taken pictures of Eichelbrenner's facial injuries. Those pictures were admitted into evidence. Finke, the mother of Eichelbrenner's child, testified that she had spoken with Toole in the morning after the incident and that Toole had only complained that Eichelbrenner had "hit" her, not that he had repeatedly kicked her or abducted her.

{¶13} At the end of the trial, Eichelbrenner orally requested that the trial court instruct the jury on self-defense. The trial court denied the request, citing Eichelbrenner's failure to testify. The court granted Eichelbrenner's request to instruct the jury on the lesser offense of assault. Ultimately, the jury found Eichelbrenner guilty of felonious assault, but not guilty of abduction. The trial court sentenced him to a five-year term of incarceration.

## II. Prior Bad Acts--Invited Error

{¶14} In his first assignment of error, Eichelbrenner argues that the trial court erred by admitting Toole's testimony that Eichelbrenner had hit her on several prior occasions. Evidence of prior bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith," although the evidence may be admissible for other purposes. Evid.R. 404(B). In this case, the state does not argue that the evidence of the prior bad acts was admissible for one of the excepted purposes. The state argues, however, that Eichelbrenner invited the error.

{¶15} The doctrine of invited error provides that a party may not " 'take advantage of an error which he himself invited or induced.' " *State v. Bey*, 85 Ohio St.3d 487, 493, 709 N.E.2d 484 (1999), quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. The state contends that Eichelbrenner's counsel invited the error by

repeatedly asking the questions that elicited responses from Toole concerning Eichelbrenner's prior acts of violence against her.

{¶16} Courts have found invited error when a party introduces inadmissible evidence through his own witness and when a party elicits extensive testimony about prior crimes on cross-examination. *See State v. Woodruff*, 10 Ohio App.3d 326, 327, 462 N.E.2d 457 (2d Dist.1983); *State v. Trollinger*, 1st Dist. No. C-110340, 2012 Ohio App. LEXIS 2113, *11-12 (May 30, 2012). We disagree with the state's assertion that defense counsel invited the error based on the question he asked: counsel clearly asked Toole about the night in question. However, the record shows that defense counsel told Toole to continue with her testimony involving prior bad acts before the trial court had finished ruling on the objection. The trial court had previously sustained defense counsel's objection to similar testimony, and the court had granted a motion in limine with respect to the events surrounding a temporary restraining order issued in Indiana.

{¶17} Under these circumstances, we hold that the invited-error doctrine applies. As a result, Eichelbrenner, who induced the error, is prohibited from taking advantage of the error on appeal. For this reason, we overrule the first assignment of error.

### III. Self-Defense Instruction

{¶18} In his second assignment of error, Eichelbrenner contends that the trial court erred by failing to instruct the jury on the affirmative defense of self-defense. The trial court refused to instruct the jury on self-defense because Eichelbrenner "did not testify."

{¶19} Under Ohio law, self-defense is an affirmative defense that legally excuses criminal conduct. *State v. Edwards*, 1st Dist. No. C-110773, 2013-Ohio-239, ¶

5, citing *State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973). The accused bears the burden of going forward with evidence of an affirmative defense and the burden of proving the defense by a preponderance of the evidence. R.C. 2901.05(A). *Id.*

{¶20} The first element a defendant must establish to prevail on a claim of self-defense is that he was not at fault in creating the situation that gave rise to the use of force, or, if he was the aggressor, that he had withdrawn and his right of self-defense was revived. *State v. Melchior*, 56 Ohio St.2d 15, 21, 381 N.E.2d 195 (1978).

{¶21} Second, to justify the use of force, the defendant must also demonstrate that he "reasonably believed that some force was necessary to defend himself against the imminent use of unlawful force." *See In re Maupin*, 1st Dist. No. C-980094, 1998 Ohio App. LEXIS 5907, *5-6 (Dec. 11, 1998), citing *Columbus v. Dawson*, 33 Ohio App.3d 141, 142, 514 N.E.2d 908 (10th Dist.1986); *Akron v. Dokes*, 31 Ohio App.3d 24, 25, 507 N.E.2d 1158 (9th Dist.1986). The excessive use of force will render the claim of self-defense invalid. *See State v. McLeod*, 82 Ohio App. 155, 157, 80 N.E.2d 699 (9th Dist.1948); *State v. Speakman*, 4th Dist. No. 00CA035, 2001 Ohio App. LEXIS 1489, *11-12 (Mar. 27, 2001).

{¶22} Furthermore, to justify the use of deadly force, the record must demonstrate that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm, that his only recourse was to use force, and that he did not violate any duty to retreat or avoid the danger. *See State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus, approving and following *Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195; *State v. Roberts*, 139 Ohio App.3d 757, 764, 745 N.E.2d 1057 (1st Dist.2000).

{¶23} As the Ohio Supreme Court has repeatedly stated, the elements of self-defense are cumulative. *See, e.g., State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990); *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986). And the accused is entitled to an instruction on self-defense only where the evidence in support, if believed, "would raise a question in the mind[] of [a] reasonable [person] concerning the existence of such issue." *Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195, at paragraph one of the syllabus.

{¶24} A defendant who does not testify is not precluded from requesting an instruction on self-defense if the evidence otherwise supports the defense. *See State v. Seliskar*, 35 Ohio St.2d 95, 96, 298 N.E.2d 582 (1973); *State v. McDade*, 113 Ohio App. 397, 404, 178 N.E.2d 824 (6th Dist.1959), citing *Graham v. State*, 98 Ohio St. 77, 81, 120 N.E. 232 (1918); *State v. Hatfield*, 9th Dist. No. 23716, 2008-Ohio-2431, ¶ 11.

{¶25} In this case, the trial court denied Eichelbrenner's request for a self-defense instruction on the ground that he did not testify. The trial court erred in that determination if the evidence otherwise supported an instruction on self-defense. Accordingly, we review the record to determine whether it contains such evidence.

{¶26} We begin by reviewing the evidence on the first element of the defense: whether Eichelbrenner was at fault in creating the situation that gave rise to the use of force. Essentially, one cannot create a situation to provoke an attack upon himself to create a pretext for the use of force. *See Melchior*, 56 Ohio St.2d at 21, 381 N.E.2d 195; *Stewart v. State*, 1 Ohio St. 66 (1852) (holding that "[w]here the slayer seeks and provokes an assault upon himself, in order to have a pretext for stabbing his adversary, and does, upon being assaulted, stab and kill him, such killing is not excusable homicide in self-defense."); *State v. Cobb*, 153 Ohio App.3d 541, 2003-Ohio-3821, 795 N.E.2d 73, ¶ 11 (1st Dist.); *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439,

8

874 N.E.2d 870, ¶ 17 (2d Dist.) (holding that defendant must show "that he had not engaged in such wrongful conduct toward his assailant that the assailant was provoked to attack the defendant as he did.").

{¶27} Eichelbrenner argues that he was not at fault in creating the affray and that he had repeatedly tried to escape from Toole. But Toole testified that Eichelbrenner had initiated the physical contact by taking her cellular phone away from her and then repeatedly striking her when she asked for it back. Additionally, she testified that she wanted to leave but stayed only to retrieve her phone.

{¶28} As Eichelbrenner did not testify, the only other evidence on the issue of who caused the altercation came from Barber. He testified that he believed Toole was the aggressor because she had followed Eichelbrenner around the house, and he had observed her hitting and scratching Eichelbrenner's face before Eichelbrenner kicked her in the shoulder as she lay on the family-room floor. But Barber admitted that he was not aware that Eichelbrenner had taken Toole's cellular phone from her, and he confirmed that Toole had retrieved her cellular phone from Eichelbrenner after Eichelbrenner had fallen asleep. Further, he admitted that he had not observed what had occurred outside of the house.

{¶29} After reviewing this evidence, we conclude that the record of the proceedings below is devoid of evidence that would reasonably support a finding that Eichelbrenner was not at fault in creating the situation that gave rise to the use of force. *See Melchior*, 56 Ohio St.2d at 21, 381 N.E.2d 195; *Maupin*, 1st Dist. No. C-980094, 1998 Ohio App. LEXIS 5907. Under these circumstances, Eichelbrenner was not entitled to the self-defense instruction.

{¶30} Although the trial court erred when it refused the requested instruction solely on the ground that Eichelbrenner did not testify, that error was harmless where

the instruction was not warranted. *See* Crim.R. 52(A). Accordingly, we overrule the second assignment of error.

## IV. Sufficiency and Weight of the Evidence

{¶31} In his third and fourth assignments of error, Eichelbrenner argues that his conviction was not supported by sufficient evidence and that his conviction was against the manifest weight of the evidence.

{¶32} Our review of the record convinces us that the evidence adduced at trial clearly met the test for sufficiency. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus (holding that evidence sufficient when it permits reasonable trier of fact to conclude elements of offense have been proved beyond a reasonable doubt), following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶33} Eichelbrenner was convicted of felonious assault, in violation of R.C. 2903.11(A)(1), for knowingly causing serious physical harm to Toole. It was undisputed that Toole's right collarbone was broken in two places and, therefore, that she had suffered "serious physical harm" within the meaning of the felonious-assault statute. *See* R.C. 2901.01(5). Further, the record contains ample evidence that Eichelbrenner caused Toole's injury when he kicked her either in Barber's family room or outside of Barber's house.

{¶34} Finally, the record contains sufficient evidence that Eichelbrenner acted knowingly when he kicked Toole with enough force to break her collarbone in two places. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will be of a certain nature." R.C. 2901.22(B).

10

{¶35} Eichelbrenner additionally argues that Toole was not a credible witness, and therefore, his conviction was against the manifest weight of the evidence. But we find nothing in the record of the proceedings below to suggest that the jury, in resolving the conflicts in the evidence adduced on the charged offense, lost its way or created such a manifest miscarriage of justice as to warrant the reversal of Eichelbrenner's conviction. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We note that the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Moreover, the testimony from Eichelbrenner's own witness, Barber, was sufficient to establish the offense.

{¶36} Based upon our review of the record, we determine that Eichelbrenner's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, we overrule the third and fourth assignments of error.

## V. Conclusion

{¶37} Because we overrule Eichelbrenner's four assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.