[Cite as *Parma v. Treanor*, 2018-Ohio-3166.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106275**

**CITY OF PARMA**

PLAINTIFF-APPELLEE

vs.

**DANIEL J. TREANOR**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Parma Municipal Court
Case No. 2016 CRB 05143

**BEFORE:** Keough, J., E.A. Gallagher, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 9, 2018

**ATTORNEYS FOR APPELLANT**

David M. Leneghan
K. Scott Carter
200 Treeworth Blvd., Suite 200
Broadview Heights, Ohio 44147


**ATTORNEY FOR APPELLEE**

John L. Reulbach
14701 Detroit Avenue, Suite 575
Lakewood, Ohio 44107

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Daniel Treanor, appeals his convictions for aggravated menacing and domestic violence. Finding merit to the appeal, we reverse and remand for a new trial.

{¶2} In December 2016, Treanor was charged with two counts of aggravated menacing in violation of Parma Codified Ordinances 636.04 and one count of domestic violence in violation of R.C. 2919.25(C). The matter proceeded to a jury trial where the following evidence was presented.

{¶3} Treanor's son, Seth Treanor ("Seth"), testified that during the late hours of December 11, 2016, he received a call from his sister, who was upset and intoxicated, claiming that their father was threatening to kill himself. Although Seth and his father had a distant relationship, he agreed to check on their dad. Because he himself had been drinking, his friend Andrew Block ("Andrew") drove him to Treanor's house; their other friend Caitlin accompanied him as well. Both Seth and Andrew entered the home; Andrew waited in the kitchen while Seth entered the living room, finding Treanor asleep on the couch. Located nearby were empty beer cans and a loaded firearm. Seth testified that he removed the clip from the firearm and placed it in the kitchen.

{¶4} When Seth returned to the living room, he awoke Treanor. He admittedly "came off aggressive," and "laid into" Treanor because he was frustrated about Treanor's drinking and having to check on him. Seth told Treanor that he was there to check on him because he had been told that Treanor was threatening suicide. Seth testified that a heated argument ensued

between them that lasted 15 to 20 minutes. As he was yelling and pointing at the beer cans, one of Seth's fingers was sliced open when it went inside the opening of one of the cans. With his finger bleeding profusely, Seth went into the kitchen with Treanor following. As Treanor entered the kitchen, he discovered Andrew (a stranger to him) waiting there. According to Seth, Treanor "freaked out," questioning who Andrew was. Seth stated that Treanor grabbed a firearm, loaded it, and threatened to shoot them if they did not leave. Seth stated that the gun was pointed at him, and maybe Andrew. Seth testified that Andrew immediately left. He said he felt threatened and scared, so he called the police once he exited the house. He testified that no one threatened Treanor.

{¶5} Seth testified that his sister came over to his house after he returned home. The police were eventually called because he and his sister "got into it." According to Seth, he accidentally slammed the door on his sister's finger, causing her fingertip to become severed.

{¶6} Seth admitted that he and Treanor had problems in the past and had not spoken in months. Seth had previously accused Treanor of "stealing" Seth's mother's house, and was upset that Treanor fixed a car belonging to one of Seth's ex-girlfriends. He also admitted that he previously called Treanor "a piece of s***" and "wished he died in a motorcycle accident." He further admitted that he was not invited to his father's house, but felt the lack of invitation did not prevent him from checking on him. He admitted he escalated the situation by being verbally aggressive toward Treanor, and that despite his aggressive behavior, Treanor did not threaten anyone until Treanor discovered Andrew, a stranger, standing in his kitchen. He further admitted that once he discovered that Treanor was okay, he did not leave; rather, he became verbally aggressive and "lit into" him, causing the situation that occurred. However, he denied

that he told Treanor to "go ahead and kill [him]self," threw any of Treanor's items, was asked to leave at any time prior to Treanor retrieving the gun, or told Andrew not to leave the house.

{¶7} Andrew testified that Seth told him that Treanor was less likely to "try something" if someone else was there. When they arrived at Treanor's house, Andrew saw Treanor sleeping on the couch with beer cans and a firearm on the table. He stayed in the kitchen while Seth confronted Treanor. He said that no one physically or verbally threatened anyone at that time, but that the situation changed after Seth cut his finger and Treanor discovered Andrew's presence. Andrew testified that Seth told Treanor that Andrew was a friend, but when Treanor introduced himself and tried to shake Andrew's hand, Seth told Andrew that he did not have to shake Treanor's hand, so he did not do so. Treanor then asked why Andrew was in the house. According to Andrew, Treanor told him to leave, but Seth told Andrew he did not have to leave. At that point, Treanor got his gun, and told them to "get out" or he would shoot him. Andrew testified that Treanor did not point the gun at either him or Seth, but rather pointed the gun in the air. Andrew admitted that Treanor gave him an opportunity to leave before he retrieved the gun. He further admitted he did not feel threatened until Treanor got the gun, but once Treanor had the gun and made the statements, he felt threatened with serious physical harm.

{¶8} Treanor testified in his defense. He stated that he was startled awake by his son screaming at him. He noticed that Seth was drunk. He said that during the altercation, Seth became volatile and started throwing things, including a gun case that broke against the aquarium. As the situation escalated and Treanor believed a physical altercation would ensue, he told Seth to leave at least three times. Seth became more angry and aggressively approached Treanor. When Seth cut his finger and went into the kitchen, Treanor followed him because he thought Seth was leaving. When Treanor turned on the light, he was startled by a stranger who

was standing in his kitchen. Treanor told both Seth and the stranger to leave. Treanor testified that when Andrew refused to leave, he felt threatened and went back to the living room, picked up his gun, and told them "to get the f*** out." He denied pointing the gun at anyone or threatening to shoot them. According to Treanor, Andrew left immediately, and Seth left shortly thereafter.

{¶9} Treanor testified that Seth knew he was not allowed to be in his home. He said that prior to this altercation, the last time he saw Seth was six or eight months ago. Treanor stated that Seth had previously stolen from him and been abusive toward him. He testified that based on the history between the two, Seth's intoxicated state, the aggression Seth showed, the presence of a stranger in his house, and their refusal to leave, he felt threatened with serious physical harm, causing him to retrieve his firearm and order Seth and Andrew to leave.

{¶10} At the close of the evidence, Treanor requested that the jury be instructed on self-defense and the castle doctrine. The city objected and the trial court denied Treanor's request. During closing arguments, the city reminded the jury that Treanor "wasn't justified doing what he did. It wasn't a self-defense situation, you didn't hear a self-defense argument * * *." (Tr. 190.) The jury found Treanor guilty of all charges and the following sentence was imposed:

> CT 1 [aggravated menacing]: Jail: 120 Days; 0 Days Jail suspended; 1 Day Jail Credit. 89 days deferred to Review 02/26/18 at 9:30 a.m.
> Fine: $500 and costs; $350 of fine suspended. Time to Pay.
> Defendant is to serve 30 days of House Arrest with SCRAM with release for all employment; church services, Probation Reporting; 1-4 hour per week for necessaries and all medical, dental, AA, if any. Stay of execution to 9/11/17.
>
> CT 2 [aggravated menacing]: Jail: 60 Days; 0 Days Jail Suspended; 60 Days Jail Deferred to Review on 02/26/18 at 9:30 a.m.
> Fine: $500, and costs; $400 of fine suspended.
>
> CT 3 [domestic violence]: Jail: 30 days; 29 Days Jail suspended; 1 Day Jail Credit

Fine: $250, and Costs; $250 of fine suspended.

**{¶11}** Treanor was also ordered to serve two years of probation, with nine months of reporting probation. In addition to all other standard rules of probation, Treanor was required to successfully complete a drug and alcohol assessment and anger management.

**{¶12}** Treanor now appeals, raising two assignments of error.

**{¶13}** At trial, Treanor requested that the jury be instructed on self-defense and the castle doctrine. The city objected. Following oral arguments, the trial court denied the request because the evidence showed that Treanor only threatened to use force — he did not actually discharge the firearm or use force. Therefore, according to the trial court, the requested instructions were not applicable. In his first assignment of error, Treanor contends that the trial court erred in failing to give the jury the requested instructions.

**{¶14}** When reviewing a refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal was an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989).

**{¶15}** It is well settled in this district that self-defense and the castle doctrine are affirmative defenses to offenses where the threat of harm is an element of the offense. *See, e.g., State v. Chopak*, 8th Dist. Cuyahoga No. 96947, 2012-Ohio-1537, ¶ 11 (aggravated menacing); *see also State v. Edwards*, 1st Dist. Hamilton No. C-110773, 2013-Ohio-239; *State v. Ludt*, 180 Ohio App.3d 672, 2009-Ohio-416, 906 N.E.2d 1182 (7th Dist.); *State v. Russell*, 12th Dist. Warren Nos. CA2011-06-058 and CA2011-09-097, 2012-Ohio-1127; *State v. Moreland*, 2d Dist. Montgomery No. 26155, 2015-Ohio-448.

**{¶16}** Accordingly, the trial court was incorrect in concluding that jury instructions on self-defense and the castle doctrine are not applicable as an affirmative defense when only a

threat of force is used. These defenses would be available to Treanor if sufficient evidence was presented to warrant the instructions.

**{¶17}** The city maintains that even if the trial court erred, it was harmless because Treanor did not satisfy his burden in proving self-defense or that the castle doctrine applied. Whether the jury would believe Treanor's testimony and find that he acted in self-defense is not for this court to consider. *State v. Abner*, 55 Ohio St.2d 251, 379 N.E.2d 228 (1978) (evidence was presented at trial to support a claim of self-defense; whether the defendant acted in self-defense is a factual matter for the jury to determine). Accordingly, the issue before this court is whether the jury should have received instructions pertaining to self-defense and the castle doctrine for consideration during its deliberations.

**{¶18}** "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. If a requested instruction contains a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. *State v. Nelson*, 36 Ohio St. 2d 79, 303 N.E.2d 865 (1973), paragraph one of the syllabus, *overruled on other grounds*, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). However, the trial court should not instruct the jury where there is no evidence to support an issue. *State v. Williams*, 8th Dist. Cuyahoga No. 95748, 2011-Ohio-5385, ¶ 32, citing *Riley v. Cincinnati*, 46 Ohio St.2d 287, 348 N.E.2d 135 (1976); *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991).

**{¶19}** In determining whether a defendant has introduced sufficient evidence to warrant a jury instruction on self-defense, "the test to be applied is whether the defendant has introduced

evidence that, if believed, is sufficient to raise a question in the minds of reasonable persons concerning the existence of the offense," *State v. Ford*, 12th Dist. Butler No. CA2009-01-039, 2009-Ohio-6046, ¶ 19, because proof of an affirmative defense creates reasonable doubt of a defendant's guilt. *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, 874 N.E.2d 870, ¶ 13 (2d Dist.). In order to properly raise an affirmative defense, "evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come." *State v. Melchior*, 56 Ohio St.2d 15, 20, 381 N.E.2d 195 (1978); *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72. The trial court should view this evidence in the light most favorable to the defendant. *State v. Stephens*, 8th Dist. Cuyahoga No. 102660, 2016-Ohio-384, ¶ 19, citing *State v. Robinson*, 47 Ohio St.2d 103, 112, 351 N.E.2d 88 (1976).

{¶20} Regarding self-defense, a person is privileged to use only that force that is reasonably necessary to repel the attack. *State v. Williford*, 49 Ohio St.3d 247, 249-250, 551 N.E.2d 1279 (1990). The law of self-defense distinguishes between the use of deadly force and nondeadly force. *State v. Miller*, 149 Ohio App.3d 782, 2002-Ohio-5812, 778 N.E.2d 1103, ¶6 (1st Dist.). "Deadly force" is defined as "any force that carries a substantial risk that it will proximately result in the death of any person." *Id.*, citing R.C. 2901.01(A)(2); R.C. 2923.11(A) ("deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon).

{¶21} In this case, Treanor testified that he grabbed his gun and told Seth and Andrew "to get the f — out" of his house. He denied pointing the gun at anyone or threatening to shoot them with it. However, both Seth and Andrew testified that Treanor threatened to shoot them if they did not leave. Treanor did not discharge the firearm, and conflicting evidence was presented by the state's witnesses as to whether Treanor actually pointed the firearm at either

Seth or Andrew. Andrew testified that Treanor did not point the gun at anyone, but rather pointed the gun in the air while telling them he would shoot them if they did not leave his house. Andrew further admitted that Treanor told him to leave before he retrieved the gun, but that he did not leave despite being told to do so. In fact, Andrew admitted that Treanor gave him an opportunity to leave before the gun was retrieved. Accordingly, because Treanor had possession of the firearm and made either an implicit or explicit threat, the instruction of self-defense by deadly force would arguably be the appropriate instruction requested.

{¶22} In order to prove self-defense by means of deadly force, a defendant must prove that "(1) he was not at fault in creating the situation, (2) he had reasonable grounds to believe and an honest belief that he was in immediate danger of death or great bodily harm and that his only means of escape from such danger was by the use of deadly force, and (3) he had not violated any duty to escape to avoid the danger." *Ludt*, 180 Ohio App.3d 672, 2009-Ohio-416, 906 N.E.2d 1182, at ¶ 21.

{¶23} In this case, Treanor presented sufficient evidence to establish that he was not at fault for creating the situation. Seth testified that he went to Treanor's house in an intoxicated state with Andrew to check on Treanor after receiving a call from his sister that their father was threatening suicide. Seth admitted that after he saw that Treanor was asleep, he decided to escalate the situation by waking him up and yelling at him. Seth admitted he caused the situation. Additionally, sufficient evidence was presented to establish that Treanor had no duty to retreat before using the necessary force because the altercation occurred in his own home. *See* R.C. 2901.09(B) (creates an exception to the general duty to retreat when using force in self-defense in one's own home).

**{¶24}** The city contends that a self-defense instruction was not warranted because Treanor did not have a reasonable and honest belief that he was in immediate danger of death or great bodily harm and that his only means of escape from such danger was by the use, or in this case, threat of deadly force.

**{¶25}** The defendant's fear of immediate death or great bodily harm must be objectively reasonable. In addition, "Ohio has adopted a subjective test in determining whether a particular defendant properly acted in self-defense. The defendant's state of mind is crucial to this defense." *State v. Koss*, 49 Ohio St.3d 213, 215, 551 N.E.2d 970 (1990). Thus, there must be both reasonable (objective) grounds to believe that harm is imminent, and an honest (subjective) belief that harm is imminent. *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). In determining whether there are reasonable grounds for believing there was an imminent threat of great bodily harm, the court can consider whether the defendant received prior threats. *State v. Fields* (1992), 84 Ohio App.3d 423, 428, 616 N.E.2d 1185.

**{¶26}** In this case, Treanor presented sufficient evidence of such nature and quality that he had a reasonable and honest belief that great bodily harm was imminent. Treanor testified that Seth was not allowed to be in his home because they had an estranged relationship, and he had not seen his son in six or eight months. According to Treanor, Seth was not welcome in his home because on prior occasions, Seth was verbally and physically abusive and had taken things from him. Seth's testimony substantiated that he and Treanor had a distant relationship; he admitted that he had previously insulted Treanor and even wished he was dead. Treanor testified that based on the history between the two, Seth's intoxicated state, the aggression Seth showed, the presence of a stranger in his house, and Seth and Andrew's refusal to leave, Treanor

felt threatened with serious physical harm, causing him to retrieve his firearm and order Seth and Andrew to leave.

{¶27} Accordingly, it is possible that a trier of fact could have interpreted these facts as indicating that Treanor had a reasonable belief of great bodily harm, and that he used a reasonable threat of force to repel what he perceived to be and imminent threat. Treanor presented sufficient evidence of such nature and quality to warrant an instruction on self-defense. Again, whether Treanor can withstand his burden of proving that he acted in self-defense is a question for the trier of fact, not this court.

**Castle Doctrine**

{¶28} In 2008, the Ohio General Assembly through S.B. 184, enacted Ohio's castle doctrine, which is codified in R.C. 2901.05(B)(1) and 2901.09.

{¶29} R.C. 2901.05(B)(1) creates a rebuttable presumption that a person acts in self-defense "when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used * * * has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force." R.C. 2901.09 removes the duty to retreat from inside one's home before using deadly force when acting in self-defense.

{¶30} This court recently discussed R.C. 2901.05 and 2901.09 pertaining to protection of one's residence and their application depending on the status of the victim. *State v. Echevarria*, 8th Dist. Cuyahoga No. 105815, 2018-Ohio-1193. "If the victim was lawfully in the defendant's residence at the time the defendant used force against the victim, the defendant would not be entitled to the presumption of self[-]defense." *Id*. at ¶ 33, citing *State v. Lewis*, 2012-Ohio-3684, 976 N.E.2d 258, ¶ 19 (8th Dist). However, the defendant would have no duty

to retreat from his residence at the time force was used. *Id.*, citing *Lewis* at ¶ 17-19, *State v. Bushner*, 9th Dist. Summit No. 26532, 2012-Ohio-5996, ¶ 16.

**{¶31}** In this case, even if Seth and Andrew were initially lawfully present and had privilege to be at the residence, that privilege was arguably revoked when they both refused to leave when instructed. Their status potentially changed to trespassers — persons unlawfully and without privilege to be present. If they were trespassers, Treanor would have no duty to retreat from inside his own home before using deadly force. However, he would still have to prove the remaining elements of self-defense by a preponderance of the evidence.

**{¶32}** Accordingly, the trial court abused its discretion in failing to instruct the jury on self-defense and the instructions pertaining to the castle doctrine. Treanor's first assignment of error is sustained. His convictions are reversed and the case is remanded for a new trial. The resolution of the first assignment of error renders Treanor's second assignment of error, which challenges an evidentiary ruling made during trial, moot.

**{¶33}** Judgment reversed; case remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

EILEEN A. GALLAGHER, A.J., and

EILEEN T. GALLAGHER, J., CONCUR