[Cite as *State v. Jones*, 2025-Ohio-168.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 113927 |
| v. | : | |
| ALPHONSO JONES, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 23, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-684880-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory M. Paul, Assistant Prosecuting Attorney, *for appellee.*

Susan J. Moran, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Alphonso Jones ("Jones"), appeals his convictions for the murder of Jonathan Lanum ("victim") and felonious assault of Lakeisha Reynolds ("Lakeisha"), arguing that he acted in self-defense. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} At the time of the victim's death, he was 23 years old and living in his SUV with his girlfriend, Lakeisha, who was pregnant with their child. Jones and his girlfriend, Quaisha Jones ("Quaisha"), were living in a duplex on Earlwood Avenue, in Cleveland, Ohio with their 17-month-old daughter, and Quaisha's 15-year-old son. On July 7, 2023, Quaisha received a call from the victim, her favorite cousin, stating that he was coming over to "chill" with her. (Tr. 427.) The victim and Lakeisha arrived at approximately 11:30 p.m. Quaisha and the victim smoked marijuana and drank alcohol. Jones and Lakeisha did not drink or smoke.

{¶ 3} Later that evening, Jones went upstairs to check on his daughter. When he returned to the living room Jones began to argue with Quaisha about her parenting skills. Lakeisha attempted to diffuse the situation, however, Jones said "shut the f*** up. I wasn't talking to you." (Tr. 435.) The victim then "got into [Jones's] face [and t]hey started like tussling." (Tr. 435.) The victim dragged Jones out onto the porch. Quaisha testified that she tried to break up the fight and kept telling the victim and Lakeisha to leave. The victim threw Jones off the porch. Jones got up and tried to reenter the house, but Quaisha blocked him because she thought he wanted to retrieve his gun. Jones bit Quaisha on the back of her shoulder to get past her. Meanwhile, the victim and Lakeisha walked toward their vehicle.

{¶ 4} Quaisha testified that Jones went in the house and came out shooting. He ran towards the victim's SUV shooting. Quaisha testified that Jones stopped shooting, and she observed Lakeisha drive away in their SUV. Jones ran back into

the house and Quaisha tried to call the police. She testified that Jones tried to take the phone from her, but she was able to call the police. Jones packed a bag, left the house, and never returned. She testified that Jones contacted her a few times to see his daughter, but she would not allow him.

{¶ 5} Lakeisha testified that after the fight on the porch, she and the victim headed towards their vehicle. The victim handed her the keys and she entered the driver's side. Within seconds, the victim entered the passenger side. Lakeisha testified that "as soon as [the victim] got in the car the bullets started going in the window and stuff and it was like as the bullets was like breaking the window and stuff, I was . . . still trying to get away." (Tr. 676.) She felt glass hitting her; she heard the victim scream. Lakeisha testified that she did not know the victim had been shot until he told her. He was holding his chest, and he told her that he thought he was going to die. She drove him to the hospital where he was immediately taken into surgery and later died. The medical examiner testified that the victim's cause of death was gunshot wounds to the chest and right buttock and the manner of death was homicide. The victim tested positive for amphetamines and methamphetamines.

{¶ 6} Lakeisha testified that the victim defended his cousin, Quaisha, but did not punch Jones. She testified that the victim did not have a gun and did not threaten Jones at any time during the evening. No gun was recovered from the victim's SUV.

**{¶ 7}** The City of Cleveland had a surveillance camera located near the shooting, and the recording was played for the jury. In the video, the victim and Lakeisha can be observed walking toward their SUV, which is parked in the street. The victim hands something to Lakeisha and then walks back towards the house. Lakeisha walks to the SUV and enters. The video then shows the victim running to the SUV and entering the passenger side. Within seconds, Jones can be observed running up to the SUV and firing multiple shots into the passenger door. The SUV can be observed speeding away, while Jones can be observed running back to the house.

**{¶ 8}** Jones testified on his own behalf. He testified that he was 30 years old, did not have a criminal record, and legally owned a firearm. Jones testified that he knew the victim had an assault conviction and owned a firearm. Jones testified that he weighed 120 pounds and was 5′11,″ and that the victim was taller and weighed approximately 200 pounds. The autopsy report indicates that the victim was 5′8″ and 203 pounds.

**{¶ 9}** Jones testified that when the victim arrived that evening, he was "hyped up" on ecstasy and offered Jones some, which Jones declined. (Tr. 795.) Jones testified that when he and Quaisha were arguing, the victim threatened him saying "[W]atch how you are talking to her. You are going to mess around and get hurt." (Tr. 800.) Jones testified that he told the victim and Lakeisha to "get the f*** out," but they would not leave. (Tr. 801.) The victim then charged Jones and dragged him out onto the porch. Jones testified that the victim was on top of Jones,

holding him down, and Jones could not get up until he hit the victim in the testicles. He said the victim was enraged, so Jones tried to get in the house, but Quaisha blocked him. He testified that the victim grabbed him and lifted him up and slammed him over the balcony. He said he landed on his face and neck and shoulder. He testified that he was weak and groggy and had to crawl up the porch steps. He said he begged Quaisha to let him in the house, and when she would not move out of his way, he bit her shoulder.

{¶ 10} According to Jones, he went inside, grabbed his gun, put it in his pocket, and then went back outside. He testified that the victim was still enraged and ran back towards Jones and said, "I got something for you." (Tr. 806.) Jones testified that the victim ran to his vehicle and got inside, but "the car didn't pull off, but he started going under the driver's seat. . . . I took that as he was getting that weapon, so I ran — I got up closer to actually like confirm that's what he was doing, and he was really bent over under the driver's seat. Once I seen that I just fired my weapon." (Tr. 807.) Jones testified that he fired twice because he was afraid and he thought the victim was going to shoot him, his daughter, or Quaisha.

{¶ 11} After the shooting, Jones went back into his house. He testified that Quaisha was hysterical and told him he was going to die for shooting at her cousin, implying that her family would kill him. Jones testified that he packed a few things, including the gun, said goodbye to his daughter and left the house. He testified that he walked to his mother's house. Jones testified he stayed with his cousin on Lakeshore until he was arrested on September 11, 2023. He alleged that all of his

belongings, including the gun, were stolen along with his brother's vehicle in August. Jones did not make a police report.

{¶ 12} The jury found Jones guilty of one count of felony-murder, three counts of felonious assault, and one count of discharge of a firearm on or near prohibited premises, along with the one- and three-year firearm specifications attached to each count.[1] The trial court sentenced Jones to 21 years to life in prison. Jones now appeals and raises the following assignment of error for review:

> The jury erred in concluding that the State met its burden of production in disproving Mr. Jones acted in self-defense and rendered a verdict against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 13} In Jones's sole assignment of error, he argues that the jury verdict is against the manifest weight of the evidence because the State failed to meet their burden of production and disprove that he acted in self-defense. We disagree.

{¶ 14} "When considering a manifest weight claim, a reviewing court must examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Bowden*, 2009-Ohio-3598, ¶ 13 (8th Dist.), citing *State v. Thomas*, 70 Ohio St.2d 79, 80 (1982). A manifest-weight challenge questions whether the prosecution has met its burden of persuasion. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The court may reverse the judgment of conviction if it appears that the factfinder "'clearly lost its way and created such a

---

[1] At the close of the State's case, the trial court granted Jones's Crim.R. 29 motion dismissing the aggravated murder count and the attempted murder count.

manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.”’” *Id*., quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment should be reversed as against the manifest weight of the evidence “‘only in the exceptional case in which the evidence weighs heavily against the conviction.’” *Thompkins* at 387, quoting *Martin* at 175.

{¶ 15} In *State v. Messenger*, 2022-Ohio-4562, the Ohio Supreme Court held that when a defendant claims self-defense the defendant “has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense.” *Id*. at ¶ 25. “[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden,” and the State must then disprove self-defense. *Id*. The defendant's burden of production is “not a heavy one and one that might even be satisfied through the State's own evidence.” *Id*. at ¶ 22.

{¶ 16} In order to disprove the claim of self-defense, the State must prove beyond a reasonable doubt any one of the following elements: (1) that Jones was at fault in creating the situation giving rise to the affray; or (2) that Jones did not have reasonable grounds to believe or an honest belief that he was in imminent danger of bodily harm; or (3) that Jones violated a duty to retreat or avoid danger. *State v. Scales*, 2024-Ohio-2171, ¶ 25 (8th Dist.); *State v. Walker*, 2021-Ohio-2037, ¶ 13 (8th Dist.). Upon review, the State disproved at least two of the three elements.

{¶ 17} "[W]hether the defendant was at fault in creating the situation giving rise to the affray — asks, in essence, whether the defendant was the initial aggressor." *State v. Gardner*, 2022-Ohio-381, ¶ 25 (8th Dist.), citing *State v. Batie*, 2015-Ohio-762, ¶ 8 (8th Dist.). Here, the evidence at trial established that the victim was the initial aggressor during the first altercation; however, that altercation ended when Jones entered the house and the victim headed to his vehicle. Unfortunately for everyone involved, Jones came back outside with a gun. Although the evidence established that the victim returned to the house and may have said something to Jones, the evidence also established that, at this point, there was no new altercation, that the victim did not have a gun, and that the victim ran back to his vehicle and entered the passenger side. Jones was the initial aggressor and the only participant in the second encounter. Even if, however, we were to conclude that the victim was the initial aggressor and the altercation was continuous, we find that the State disproved the second element of self-defense.

{¶ 18} Jones argues that he had reasonable grounds to believe or an honest belief that he was in imminent danger of bodily harm because the victim was physically larger and stronger than Jones; the victim had a prior assault conviction; the victim had a gun in his vehicle; and the victim threatened Jones with, "I've got something for you." (Tr. 806.) We find Jones's argument unpersuasive.

{¶ 19} "The second element of self-defense involves both objective and subjective considerations." *State v. Hughkeith*, 2023-Ohio-1217, ¶ 56, quoting *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997); *Parma v. Treanor*, 2018-Ohio-3166, ¶ 25

(8th Dist.). A defendant's belief that he was in immediate danger of death or great bodily harm must be objectively reasonable, and the defendant must have an honest belief that he was in such danger. *Id.* "[I]f the objective standard is met, the jury must determine if, subjectively, this particular defendant had an honest belief that [he] was in imminent danger." *Thomas* at 326. The State may disprove self-defense by demonstrating that the defendant's belief was not objectively reasonable or that he did not have an honest subjective belief that he faced imminent death or great bodily harm. *State v. Smith*, 2020-Ohio-4976, ¶ 56 (1st Dist.).

{¶ 20} In this case, we cannot say that Jones's belief that he was in imminent danger of death or great bodily was objectively reasonable. The victim did not have a gun, and he retreated to his vehicle after Jones came outside with a gun. If Jones believed that the victim was retrieving his gun, Jones could have gone in his house, locked his doors, and called police. Instead, Jones pursued the victim to his vehicle and then fired his weapon — at close range — into the passenger side window and door where the victim was ducking to avoid being shot.

{¶ 21} It is well settled that "'a conviction is not against the manifest weight of the evidence simply because the [trier of fact] rejected the defendant's version of the facts and believed the testimony presented by the state.'" *State v. Jallah*, 2015-Ohio-1950, ¶ 71 (8th Dist.), quoting *State v. Hall*, 2014-Ohio-2959, ¶ 28 (4th Dist.). Here, the jury heard all the evidence and believed the State's version of the facts over Jones's. After reviewing the entire record, we cannot say that the jury lost its way

when it concluded that Jones did not act in self-defense. Nor can we say that his convictions were against the manifest weight of the evidence.

{¶ 22} Accordingly, Jones's sole assignment of error is overruled.

{¶ 23} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR