The STATE of Ohio, Appellee,

v.

MILLER, Appellant.

[Cite as State v. Miller, 149 Ohio App.3d 782, 2002-Ohio-5812.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C-020096.

Decided Oct. 25, 2002.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Paula Adams, Assistant Prosecuting Attorney, for appellee.

Herbert E. Freeman, for appellant.

GORMAN, Judge.

{¶ 1}  The defendant-appellant, Ronald Miller, was found guilty in a bench trial of aggravated assault, a violation of R.C. 2903.11(A)(2).  He challenges his conviction as based upon insufficient evidence and contrary to the weight of the evidence.  Because the trial court's own findings conclusively establish the affirmative defense of self-defense, we reverse and discharge Miller from further prosecution.

{¶ 2}  On August 15, 2001, the eighteen-year-old Miller was sitting on the front steps to the apartment building in which he resided with his mother.  His leg was in a knee-high cast.  Michael Ward, a twenty-eight-year-old who had never met Miller, approached him, pointed a finger in his face, and threatened to "kick [his] ass."  Ward's anger stemmed from an alleged incident between Miller and Ward's father.  According to Miller, Ward told him that he had a carload of friends with guns waiting nearby.  Miller's reaction, as described in the state's own brief, was one of fear and retreat.  Miller, the state concedes, "became frightened, began calling for his mother and brother, ran into the apartment building, * * * shut the front door to the apartment building," and then "ran up the stairs to his mother's second floor apartment and shut the front door."

{¶ 3}  Meanwhile, Ward, unable to gain access to the building through the locked outer door, jumped onto a first-floor balcony of another tenant's apartment and then ran through the apartment, into the main hallway, and up the stairs to the apartment in which Miller was hiding.  Miller could hear Ward's footsteps in the hall.  A friend inside handed him a gun.  The state's brief describes the ensuing confrontation as follows: "Mr. Ward *threw open* the apartment's front door and Defendant fired a *warning shot,* striking the door frame."  (Emphasis added.)

{¶ 4}  Miller was indicted for felonious assault.  The trial court "reluctantly" found him guilty of aggravated assault, an offense of an inferior degree, and sentenced him to two years of community control.  In rejecting Miller's claim of self-defense, the trial court ruled that the evidence clearly established that Ward was the aggressor and had provoked the incident.  Indeed, the court noted that Ward had demonstrated an exceptionally frightful and volatile personality even while testifying.  Further, the court expressly found that Miller had a "good faith belief that he was in imminent danger of death or great bodily harm."  But the trial court rejected Miller's claim of self-defense on the basis that he had failed to show "that his only means of escape was by shooting a weapon, shooting a gun."  Amplifying on its reasoning, the court noted that it was "very possible [Miller] had no other options available," and that Miller "did almost everything he could do to avoid the situation."  Still, the court concluded that Miller had failed to

prove that his use of the gun was appropriate because he had not shown that he could not have retreated further. For example, the court noted, Miller had not shown that he could not have "run out the back door."

{¶ 5} Miller contends that the trial court's remarks demonstrate that it improperly imposed upon him a duty to retreat, even in his own home, in order to justify the use of a handgun in defense of an attacker threatening death or great bodily harm. We agree.

{¶ 6} Initially we observe that the law of self-defense does not distinguish between the weapons used to defend oneself but only between deadly force and non-deadly force. Provided that a person is justified in using deadly force, the defender's choice of weapon is largely irrelevant, be it a gun or the defender's fists. We therefore interpret the trial court's statements objecting to Miller's use of a gun as denying him the right to use deadly force.

{¶ 7} In order to establish a right of self-defense involving deadly force, the defendant must establish three elements: (1) that the defendant was not at fault in creating the situation; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that the only means of escape was in the use of force; and (3) that the defendant had not violated any duty to retreat or avoid the danger. *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus. Because it is an affirmative defense, the burden is on the defendant to prove the elements by a preponderance of the evidence. *State v. Martin* (1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166, affirmed (1987), 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267.

{¶ 8} The trial court found that Miller had proven the first two of the three essential elements, and the state does not challenge these findings, nor do we find any basis to disturb them on appeal. As for the third element, the trial court believed that Miller had an obligation to retreat from his own home or to improvise an alternative means for resisting Ward's attack that did not involve the use of a gun. The court's reasoning was not consistent, however, with the law of self-defense in Ohio. Although it is well settled that "a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation" himself, the duty to retreat does not apply if one is assaulted in one's own home. *State v. Thomas* (1997), 77 Ohio St.3d 323, 326–327, 673 N.E.2d 1339, citing *Robbins*, 58 Ohio St.2d at 79–81, 12 O.O.3d 84, 388 N.E.2d 755. The rationale for the exception is that a person who has fled into the sanctuary of his own home, or is attacked in his own home, is considered to have his back already to the wall and therefore is under no further duty to retreat. *Thomas*, supra, at 327, 673 N.E.2d 1339.

{¶ 9}  In sum, one who is threatened with death or great bodily harm in his own home may use all reasonable force, including deadly force, to repel his attacker.  See, also, *State v. Napier* (1995), 105 Ohio App.3d 713, 722, 664 N.E.2d 1330; *In re Maupin* (Dec. 11, 1998), 1st Dist. No. C–980094, 1998 WL 852583. Before announcing its finding of guilt, the trial court expressed its legitimate and worthy concerns about the number of cases involving the use of guns by young people.  But simply because a person is young and has ready access to a handgun does not deny him the same right of self-defense that any other citizen has under similar circumstances.

{¶ 10}  Accordingly, based upon uncontradicted evidence and the trial court's own findings, we hold that Miller had established all of the elements of proper use of deadly force, i.e., a handgun, to defend himself.

{¶ 11}  Miller also contends that the state's evidence was insufficient to sustain a conviction for aggravated assault because the only evidence was that he had fired a "warning shot."  As defined by R.C. 2903.12(A)(2), the essential elements of aggravated assault require a defendant to cause or to attempt to cause physical harm to another by means of a deadly weapon.  Because Ward was not wounded, the state was required to show that Miller was attempting to hit Ward when he shot at him.  By accepting Miller's characterization of the shot he fired as a "warning shot" in its brief, however, the state appears to have conceded that Miller was not intending to hit Ward, and therefore not attempting to cause him physical harm.  Such a concession is tantamount to an acknowledgement that the conviction was based upon insufficient evidence.

{¶ 12}  Because one who fires a weapon in the direction of another, particularly at close range, may reasonably be inferred to have intended the natural consequences of that act, we choose not to dispose of this case on the apparently inadvertent concession by the state.  Such a concession would not affect the evidence before the trial court, and it was clearly within the province of the trial court, as finder of fact, not to believe Miller's self-serving claim that he was not aiming the gun to injure Ward. It does not matter, however, whether Miller aimed his self-proclaimed warning shot *at* Ward or *near* him, because the record clearly establishes that Miller had a legal right to have done either.

{¶ 13}  Because the trial court erred as a matter of law by convicting Ward on the basis of a nonexisting duty to retreat in his own home, and in denying him the right to use deadly force to repel an attacker threatening death or great bodily harm, we reverse the judgment as contrary to law.  Miller is, accordingly, ordered discharged.

Judgment reversed
and appellant discharged.

PAINTER, P.J., and SUNDERMANN, J., concur.