DECISION
{¶ 1} The defendant-appellant, Patricia Vandergriff, appeals from her conviction for voluntary manslaughter following a bench trial. The trial court acquitted her of the more serious charge of murder, but rejected her claim of self-defense. She was sentenced to an eight-year prison term. In her two assignments of error, she now argues that her conviction was based upon insufficient evidence and was contrary to the weight of the evidence, and that she was improperly sentenced. For the following reasons, we affirm.
 Background {¶ 2} On June 4, 2002, Vandergriff stabbed to death Donnie Campbell, with whom she had been engaged in a relationship that appears to have been mutually abusive, emotionally and physically.[1] The weapon she used was an orange-juice bottle that she had broken for the purpose of using it as a defensive weapon. On the day of his death, Campbell and Vandergriff were involved in a row, Campbell having thrown Vandergriff out of his house the night before. According to the witness closest to the incident, Mervin Martin, a fight erupted between the two when Campbell, upon seeing Vandergriff approach him at a corner, deliberately tossed a cup of his own urine in her face. (Martin testified that Campbell had been drinking.) According to Martin, Vandergriff responded by telling Campbell in a scoffing tone, "[T]hat make you think you're a man, because you do stuff like that. You should leave me alone and take care of your house, because you put me out, I can't come back." Campbell then, according to Martin, flew into a rage and struck Vandergriff hard in the face, twice, staggering her backward. Then, Martin testified, "she tried to walk off, and that's when he swung another time, and she got the bottle." The bottle had been lying on the sidewalk, and Vandergriff picked it up, broke it, and told the victim not to hit her again. Martin stated that Campbell did not heed the warning and lunged at Vandergriff. He stated that when Campbell tried to hit her, Vandergriff "held her hand up to stop him from hitting her." Apparently, it was at this point that the jagged glass of the broken bottle entered Campbell's neck, puncturing his jugular vein. Martin testified that Vandergriff immediately took off down the street, and that Campbell, unaware of the seriousness of his wound, ran after her, eventually pulling her to the ground. Asked who was the aggressor in the fight, Martin, who appears to have been more friendly with Campbell, stated that Campbell was, and that he remained the aggressor throughout the incident.
 {¶ 3} Another witness, Renee Mason, was driving down Kemper Lane when both Campbell and Vandergriff entered the street in front of her vehicle. She described how Campbell, who was running after Vandergriff, pulled her to the ground. Both persons, she testified, were "covered in blood," although later she was able to see that it was Campbell who was bleeding from the neck. She testified that another woman intervened to attend to Campbell, whose wounds had robbed him of his strength and made him unable to get up from the pavement. Vandergriff, she testified, did not flee but watched as the other woman screamed for help. Mason called the 911 operator on her cellular phone.
 {¶ 4} Another witness, Loyce Page, was also in a car and saw Campbell and Vandergriff scuffling on the ground in the street. Asked who was the aggressor, Page replied, "Well, when I saw — oh, when I saw him breaking loose from her, then it looked as if she was the aggressor. It looked like she cut him. I don't know." Page did state, however, that when she first saw the two scuffling, it appeared that Campbell was the aggressor, with Vandergriff pinned beneath his weight as they struggled.
 {¶ 5} Eddie Neal testified that he viewed the incident from across the street. According to Neal, the fight began when Campbell refused Vandergriff's request for a cigarette lighter. Neal stated that he heard both cursing and screaming. He then described Vandergriff breaking the orange-juice bottle and Campbell trying to defend himself. He denied seeing Campbell strike or physically assault Vandergriff. As the fight was described by Neal, "He [Campbell] asked her to give him her lighter. And she said, no, I'm not giving you no damn lighter, and busted the bottle while he was trying to walk away from her, and hit him with the bottle. She tried to run from him, and he was trying to defend himself. And he grabbed her, and they both fell in the middle of the street."[2]
 {¶ 6} Police officers arrived promptly. Vandergriff approached one of the officers and told her, "I didn't mean to do it. I cut him." She explained how Campbell had thrown a cup of his own urine in her face. After being told by the officer to sit down, she continued to talk, expressing her frustration at Campbell hitting her and insisting that she had not meant to "do it." The officer who stayed with her testified that she thought that Vandergriff was intoxicated, as indicated by her jitteriness, volubility, and inability to focus on the subject at hand Because she did not smell alcohol upon her person, the officer, based upon her experience, theorized that Vandergriff was intoxicated with crack cocaine. Vandergriff was then examined by medical personnel and taken by ambulance to a hospital where she received stitches for a cut on her hand According to the officer with her, Vandergriff continued to express her concern for Campbell's condition.
 {¶ 7} The deputy coroner testified that Campbell's blood on autopsy was found to have an alcohol concentration of .142. (The autopsy was performed some 17 hours after death, thus allowing Vandergriff's defense to establish that the actual level may have been higher at the time of death and even higher at the time of the stabbing.) Cocaine metabolites were also found in his system. The deputy coroner described the wound that killed Campbell as extending through the external jugular, the left sternocleidomastoid muscle, the left internal jugular, the superior thyroid cartilage, the greater horn of the thyroid cartilage, and the back of the larynx, and ending on the right aspect of the fourth cervical vertebral body. According to the deputy coroner, such a wound was not consistent with a glancing blow but more like "holding onto a hammer and striking something, that kind of force." Upon cross-examination, however, he conceded that it was possible, but "not likely," that Campbell stumbling forward into the full force of the bottle had caused the severity of the lethal wound. The deputy coroner identified two other non-lethal wounds, one a brush wound and the other a stab wound. He stated that Campbell died from "hemorrhagic shock, from bleeding out from these wounds."
 {¶ 8} The defense presented only one witness, the emergency-medicine physician who attended to Vandergriff. She described Vandergriff's injury as a "web space laceration at the base of [the] thumb of her right hand, about two centimeters in length." She characterized the wound as "fairly superficial." The physician testified that she prescribed a dosage of Ativan due to Vandergriff's agitated state. Upon cross-examination, the physician stated that Vandergriff did not at any time present complaints regarding injuries to her face or head. She stated that she could not recall seeing any such injuries, and that if Vandergriff had had any such injuries that required treatment, she would have administered the necessary medical care.
 Conviction by the Trial Court {¶ 9} As noted, the trial court acquitted Vandergriff of the more serious charge of murder, but convicted her of voluntary manslaughter. In announcing its verdict, the trial court expressly rejected the defense argument that the blow that had killed Campbell was an inadvertent, purely defensive action. The trial court stated that the severity of the blow, both as testified to by the deputy coroner and as demonstrated photographically, was simply not consistent with a "glancing blow," but reflected, rather, deliberateness and intent to injure. The court did conclude, however, that Campbell had been the aggressor in the situation that led to his death. Still, the court rejected Vandergriff's claim of self-defense on the basis that she had not proved by a preponderance of the evidence that her use of deadly force was appropriate to the seriousness of the perceived risk from Campbell. The court pointed out that Campbell was not armed. But the court did find, based upon the totality of circumstances, that Vandergriff had been provoked and incited into using deadly force by Campbell, and was thus guilty of manslaughter rather than murder.
 Sentence by the Trial Court {¶ 10} In sentencing Vandergriff, the trial court observed, "This is a sad case." The court acknowledged that Vandergriff was a crack-cocaine addict who functioned at the borderline level of mental retardation. The court also noted, however, that she had a prior record of misdemeanor offenses and several unsuccessful probations, some of which involved unsuccessful drug treatment. The court took into account as well that Vandergriff had grown up in a "very distressful environment, abused by her own brothers, and her parents." As stated by the court, "She didn't have a chance from the beginning."
 {¶ 11} The court found, nonetheless, that a minimum sentence of three years would demean the seriousness of the offense that had resulted in the loss of a life. The court further found that a minimum sentence would not adequately protect the public given Vandergriff's history of failing to comply with drug-treatment programs. Accordingly, the court sentenced her to an eight-year prison term.
 Assignments of Error {¶ 12} In her first assignment of error, Vandergriff argues that her conviction for voluntary manslaughter was based upon insufficient evidence and was contrary to the manifest weight of the evidence. We disagree.
 {¶ 13} Although questioning both the sufficiency and the weight of the evidence, Vandergriff readily admits in her brief that her argument with respect to her claim of self-defense goes more to weight than to sufficiency. She asserts that the preponderance of the evidence demonstrated all the elements necessary to establish that she had acted in self-defense when she inflicted a lethal blow to Campbell's neck, severing his jugular.
 {¶ 14} As this court has noted, "In order to establish a right of self-defense involving deadly force, the defendant must establish three elements: (1) that the defendant was not at fault in creating the situation; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that the only means of escape was in the use of force; and (3) that the defendant had not violated any duty to retreat or avoid the danger." State v. Miller,149 Ohio App.3d 782, 785, 2002-Ohio-5812, 778 N.E.2d 1103, citing Statev. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus. Since it is an affirmative defense, the defendant has the burden to prove each of the elements by a preponderance of the evidence. Id., citing State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, affirmed (1987), 480 U.S. 228, 107 S.Ct. 1098.
 {¶ 15} As to the duty to retreat, it is well settled that one cannot defend himself with lethal force peremptorily. Rather, a person must first avail himself of any reasonable means of retreat, at least when attacked outside the confines of his own home. State v. Thomas
(1997), 77 Ohio St.3d 323, 326-327, 673 N.E.2d 1339. Thus, in most cases, a person cannot simply stand and deliver a lethal blow but must attempt to extricate himself from the confrontation or "retreat to the wall" insofar as possible. Id. at 326, 673 N.E.2d 1339.
 {¶ 16} In the present case, there were obviously many aggravating, as well as mitigating, circumstances. The victim's behavior toward Vandergriff was, without a doubt, despicable. But simply because Campbell acted as he did and assaulted her did not justify Vandergriff resorting to the extreme measure of killing him unless she was able to demonstrate by the preponderant weight of the evidence that the situation did not occur by any fault of her own and that her "only means" of avoiding death or great bodily harm was to use lethal force, meaning that there was no way she could have defused the situation earlier by walking away or retreating, or defended herself by striking non-lethal blows.
 {¶ 17} As the trial court observed, there were many facets to the evidence in this case. Testimony established that Vandergriff's relationship with Campbell was often confrontational and argumentative, as well as physically violent. They had apparently been fighting for days, as evidenced by Campbell kicking Vandergriff out of his house the night before. It is unclear why they could not have managed to stay out of each other's way the next day, but for some reason they both ended up on the same street, fighting.
 {¶ 18} Although Neal's testimony may have raised some doubt, it appears from Martin's testimony that Campbell struck Vandergriff with blows strong enough to stagger her backwards. The force of these blows was of crucial significance, since it was upon them, and the risk they presented to her, that Vandergriff claimed the right of lethal self-defense. Even if the blows were strong enough to stagger Vandergriff, as Martin testified, it is unclear how forceful such blows actually were if Vandergriff was jittery and intoxicated on crack cocaine, as one of the officers also testified, when she absorbed their impact. When she was examined at the hospital soon thereafter, Vandergriff did not, significantly, present any complaints of facial injury, nor were any injuries immediately visible to the emergency personnel who treated her. The lack of any visible injury (bruises, contusions, lacerations, dislodged teeth and the like) supported the trial court's conclusion that while some degree of non-lethal force would have been justified to ward off such blows, the preemptive use of lethal force was not.
 {¶ 19} Vandergriff argues that the law in Ohio only requires that she have had a bona fide subjective belief that the blows by Campbell threatened serious bodily harm or death, not necessarily that they objectively posed such a threat. See State v. Mabry (1982),5 Ohio App.3d 13, 19, 449 N.E.2d 16. While this may be true, because Vandergriff did not testify, there is no statement in the record as to how she may have perceived the threat posed by such blows. Although Vandergriff had a Fifth Amendment right not to testify, self-defense is an affirmative defense that required her to prove all the elements. What she is asking is that the evidence be construed to show that she had a bona fide subjective belief when she herself did not testify as to what she was thinking. Although Vandergriff points to the difference between her small stature and that of Campbell's, their difference in size would not alone have compelled the conclusion that Vandergriff had a bona fide belief that Campbell's blows threatened serious bodily harm or death.
 {¶ 20} Further, there was sufficient evidence to support the trial court's conclusion that the blow that killed Campbell was not an inadvertent consequence of a purely defensive act. As noted, the trial court rejected the defense claim that the lethal wound to the neck was a sideways or glancing blow based upon the testimony of the deputy coroner, as well as the autopsy photographs. This evidence strongly indicated that Vandergriff deliberately directed the blow downward, into Campbell's neck, with a large degree of force, thus giving rise to a reasonable inference that the use of deadly force was not accidental or inadvertent.
 {¶ 21} Finally, it is difficult to extract from the conflicting testimony a firm conclusion that Vandergriff satisfied her duty of retreating before resorting to the use of lethal force. Although she had been struck twice, her reaction was to pick up an orange-juice bottle and break it to be used as weapon. Arming oneself for protection is not the same thing as retreating from the battle. As noted, Vandergriff did not testify, and although no inference of guilt could be drawn from this, her silence left the record without any real explication of her thought process, in other words, whether she felt at that point that she could not afford to turn her back, or whether she had bravely, if not foolishly, elected to stand her ground. Although Vandergriff did eventually turn and attempt to run away, this occurred only after she had stabbed Campbell when he swung at her despite the fact that she was brandishing the bottle to ward him off.
 {¶ 22} In sum, we cannot say on this difficult record that the weight of the evidence established all the elements of self-defense with the necessary degree of cogency. Because this case involved a killing, the question was far more complex than whether Vandergriff had a right to defend herself. Clearly she did. The much harder inquiry was whether she had a right to defend herself by killing Campbell. The law put the burden on her to establish this, and on this record we cannot say the trial court erred by concluding that she had failed to do so.
 {¶ 23} Finally, Vandergriff argues that the evidence was insufficient to show that she knowingly caused the death of Campbell for the purposes of finding her guilty of voluntary manslaughter under R.C.2901.22(B). She again argues that the blow that killed Campbell was not shown to have been anything other than a defensive measure that accidentally resulted in death. She points also to the fact that she continued to ask about Campbell's condition at the hospital, and that she was, at the time of the stabbing, "apparently intoxicated" and functioning at what she describes as a level of "borderline mental retardation."
 {¶ 24} The testimony of the deputy coroner was sufficient evidence of a deliberate, forceful blow to Campbell's neck so that the trial court could reasonably conclude that Campbell had knowingly caused his death. A person is presumed to intend the reasonable consequences of his actions, including the forceful plunging of the sharp end of a broken bottle into the jugular area of a person's neck. The fact that Vandergriff may have immediately regretted the action and expressed concern for Campbell's survival does not alter this conclusion. Nor does the fact that she may have been under the influence of crack cocaine, which, on this record, has not been shown to have negated her capacity to understand the nature of her own actions. As for the claim of borderline retardation, the record of the trial does not contain sufficient information to support the conclusion that her mental capacity would have prevented her from acting knowingly.
 {¶ 25} Vandergriff's first assignment of error is overruled.
 Sentencing {¶ 26} Vandergriff next challenges the trial court's sentence of eight years' imprisonment. Specifically, she argues that the court erred as a matter of law by imposing more than the minimum sentence of three years. Although Vandergriff concedes that the court made a finding that a minimum sentence would demean the seriousness of the offense, she asserts that the court neglected to consider other "less serious factors" set forth in R.C. 2929.12(C), including Campbell's undeniable role in provoking the offense.
 {¶ 27} In State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165,793 N.E.2d 473, the Ohio Supreme Court held that, in addition to the written findings required by R.C. 2929.19, the trial court must also orally give reasons supporting those findings at the sentencing hearing. Additionally, we have interpreted the holding in Comer as strongly suggesting that the court must orally address at the sentencing hearing the principles of felony sentencing and the recidivism factors of R.C.2929.11 and 2929.12. State v. Burgin (Sept. 19, 2003), 1st Dist. No. C-020755, 23-Ohio-4963. The purpose is to facilitate meaningful appellate review. The record here demonstrates that the court not only made all the required statutory findings but also articulated its understanding, on the record, of the numerous mitigating and aggravating circumstances present in this case, and even expressed compassion for Vandergriff's troubled childhood and her present drug addiction. It also orally addressed the potential for recidivism, the fact that a life had been taken unjustifiably, and that prison would be consistent with the purposes of sentencing. Based on the record, we cannot perceive any procedural deficiency in the court's sentencing of Vandergriff, nor can we clearly and convincingly say that the court either committed an error of law or otherwise abused its discretion in imposing the sentence that it did.
 {¶ 28} Accordingly, Vandergriff's second assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Gorman, P.J., Hildebrandt and Winkler, JJ.
[1] As described by Mervin Martin, "It wasn't no sweet relationship. Most of it was argument."
[2] Upon cross-examination, Neal disavowed any statements attributed to him in police reports indicating that Campbell, not Vandergriff, had been the one spoiling for a fight.