[Cite as *State v. Wilson*, 2022-Ohio-3801.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                          |   |                                              |
|--------------------------|---|----------------------------------------------|
| STATE OF OHIO,           | : | APPEAL NO. C-210535<br>TRIAL NO. B-2005960   |
|     Plaintiff-Appellee, | : |                               |
|                          | : |                                              |
|   vs.          |   | *O P I N I O N.*                             |
|                          | : |                                              |
| JEREE WILSON,            | : |                                              |
|     Defendant-Appellant. | : |                            |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 26, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*John D. Hill, Jr.*, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} In early October of 2020, shots rang out in the Hawaiian Terrace apartment complex. After hearing multiple gunshots and seeing the father of her children, Sherron Peoples, burst through the door with a bloodied hand, defendant-appellant Jeree Wilson grabbed her 9 mm handgun, went outside her residence, and fired multiple shots into the night.

{¶2} After police arrived on the scene, they discovered a bullet in the front door of a residence across from Ms. Wilson's apartment. Ms. Wilson was eventually indicted for one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1). Following a jury trial in which Ms. Wilson argued that she acted in self-defense, the jury found her guilty as charged. She now appeals, asserting in her sole assignment of error that the jury's rejection of her self-defense claim ran counter to the manifest weight of the evidence. We disagree, however, and affirm the trial court's judgment.

I.

{¶3} At around 10:30 p.m. on an October night, Ms. Wilson was relaxing inside her residence while Mr. Peoples left to take their dog on a short walk. Shortly thereafter, the sound of multiple gunshots drew her to the front door. As Ms. Wilson opened the door, Mr. Peoples raced into the apartment bleeding from his hand with their dog trailing him, with bullets flying in and hitting her living room window. Ostensibly fearing for her safety, Ms. Wilson retrieved a 9 mm semiautomatic handgun she kept upstairs and, although she did not see the shooter or his location, she went outside her apartment and fired her gun multiple times down the driveway in the general direction from where she believed the bullets originated.

2

{¶4} This barrage of gunfire attracted the police's attention. Around 11:00 p.m., the Cincinnati Police Department received multiple calls about shots fired in the Hawaiian Terrace housing complex. Two of the calls came from the unit where a bullet was later found lodged in the front door. Upon arrival, police found their way to the residence of Ms. Wilson and her family, observing a collection of empty shell castings and a trail of blood leading onto the front of the residence.

{¶5} For about half an hour, officers stationed themselves at the front and rear doors of the residence and knocked with no response. After a crowd gathered near the building, a relative of one of the occupants stepped forward, indicating that the people inside were "spooked" by the presence of armed police officers (a fear amplified by the initial shooting). Eventually, after some negotiation, Ms. Wilson, Mr. Peoples, and their children stepped out of the residence with their hands up.

{¶6} While speaking with a detective, Ms. Wilson shared her story: she had heard multiple gunshots, saw Mr. Peoples return with a bloodied hand, retrieved her own gun, and fired multiple shots towards the area in which she believed the shooter to be. Eventually, Ms. Wilson executed a signed consent with the police to search her residence, allowed the officers to take photographs of the inside of her home, showed the officers her handgun, and submitted to an audio-recorded interview. During their investigation, police found multiple bullet holes in the walls inside the residence of Ms. Wilson, seemingly corroborating her account of the affair. The officers also spoke to the resident across from Ms. Wilson's apartment, who indicated that her front door had been hit by a bullet.

{¶7} The police ultimately determined that the bullet that struck the door of neighboring apartment building came from Ms. Wilson's handgun. She was arrested

and indicted on a single second-degree felony count of improperly discharging a firearm at or into a habitation.

{¶8} At trial, the court instructed the jury as to the law of self-defense and defense of others after Ms. Wilson met her burden of production. Nevertheless, the jury rejected the self-defense claim and found her guilty of the firearms offense.

II.

{¶9} Generally, it is not a good idea to fire a gun indiscriminately out into the night, particularly in a residential area. R.C. 2923.161(A)(1) prohibits any person without privilege to do so from knowingly "discharg[ing] a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." However, R.C. 2901.05(B)(1) allows a defendant to present evidence at trial that tends to support their use of force against another in self-defense or in defense of another. *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49.

{¶10} "The elements of self-defense in the use of deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such a danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid the danger." *Id.* at ¶ 48, citing *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). Once an initial showing of self-defense is made, the burden of persuasion requires the state to disprove at least one of the elements of self-defense (or defense of another) beyond a reasonable doubt. *Id.* at ¶ 49.

{¶11} On appeal, Ms. Wilson frames this point as a manifest weight problem. In reviewing whether the conviction runs counter to the manifest weight of the

4

evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses, and the entire record. *Id.* But we will only reverse if the trial court " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). " 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶12} Importantly, Ms. Wilson does not dispute that a bullet from her gun struck the door of her neighbor's residence--she only takes issue with the jury's determination that she did not act in defense of herself or her family. For its part, the state on appeal does not dispute the first or third element of Ms. Wilson's self-defense argument: whether Ms. Wilson was at fault in creating the situation or whether she violated any duty to retreat. However, the parties disagree about the second element— whether Ms. Wilson possessed a bona fide belief of imminent danger and that the use of such force represented her only means of escape.

{¶13} The second element of self-defense involves both objective and subjective considerations. *Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976 at ¶ 56, citing *State v. Vanover*, 1st Dist. Hamilton No. C-990104, 2000 Ohio App. LEXIS 4469, *3 (Sept. 29, 2000). A defendant's belief that she was in immediate danger of death or great bodily harm must be objectively reasonable, and the defendant must have an honest belief that she sat in such danger. *Id.* "[I]f the

objective standard is met, the jury must determine if, subjectively, this particular defendant had an *honest* belief that she was in imminent danger." *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). The state may disprove self-defense by demonstrating that the defendant's belief was not objectively reasonable or that she did not have an honest subjective belief that she faced imminent death or great bodily harm. *Smith* at ¶ 56.

{¶14} According to the state, it established that Ms. Wilson's use of force did not represent her only means of escaping the asserted danger since she never saw who shot the gun at her residence. Because she did not know who was shooting or where that person stood, firing into the night in the direction of other residences cannot be considered a reasonable response to any potential threat.

{¶15} Ms. Wilson counters that, after seeing Mr. Peoples race into the house bloodied after hearing several shots fired and observing bullets fly into her living room window, no rational jury could have concluded that she did not face an "immediate danger of death or great bodily harm." *See id.* But here Ms. Wilson disregards the timing and her lack of knowledge as to the assailant's location—the shooting had stopped (even by her account) and she had time to wander upstairs to retrieve her own gun. And when she returned, she did not shoot at anyone in particular; rather she simply discharged several rounds indiscriminately, removing any semblance of objective reasonableness pertaining to her self-defense claim. *See id.* In other words, careful scrutiny of her self-defense claim reveals various flaws and confirms that the state disproved the second element of self-defense beyond a reasonable doubt.

{¶16} To be sure, Ms. Wilson would enjoy a more robust self-defense claim if she already had her gun in hand when Mr. Peoples ran in with bullets trailing him and

she fired to ward off the attacker—a scenario that could be deemed to be both objectively and subjectively reasonable. Although some evidence at trial could be construed consistent with that scenario, Ms. Wilson's answers on cross-examination (and the account of facts she offers on appeal) acknowledge the gap in timing and the lack of knowledge regarding the whereabouts of any shooter.

{¶17} The gap in timing and the lack of knowledge regarding the shooter dispel any manifest weight concerns. A jury could reasonably conclude that the "imminent danger" of the situation had passed, rendering Ms. Wilson's discharge of her gun multiple times unreasonable. After a thorough review of the record, we see no basis for concluding that the jury here "lost its way." *See Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

\*　　\*　　\*

{¶18} In light of the foregoing analysis, we overrule Ms. Wilson's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.