[Cite as *In re J.S.*, 2024-Ohio-1764.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: J.S. | : | APPEAL NOS. | C-230482 |
| | | | C-230483 |
| | : | | C-230484 |
| | | | C-230485 |
| | : | | C-230486 |
| | | TRIAL NOS. | 22-3473-01Z |
| | | | 22-3473-03Z |
| | : | | 22-3473-04Z |
| | | | 22-3473-05Z |
| | : | | 22-3473-06Z |
| | : | | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are:    Affirmed in C-230482; Appeals Dismissed in C-230483, C-230484, C-230485, and C-230486

Date of Judgment Entry on Appeal: May 8, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Law Office of Arica L. Underwood* and *Arica L. Underwood* for Defendant-Appellant.

**Bоск, Presiding Judge.**

**{¶1}** In these consolidated appeals, defendant-appellant J.S. challenges his delinquency adjudication for acts that would constitute felonious assault if committed by an adult. In three assignments of error, he argues that the law and the record show that he shot the victim in self-defense. But because using a firearm in response to an unarmed attack constitutes disproportionate force, and because J.S. continued shooting while his assailant fled from the scene, the trial court's finding that the state rebutted his self-defense claim is not against the manifest weight of the evidence. We overrule his three assignments of error and affirm his delinquency adjudication in the appeal numbered C-230482.

**{¶2}** J.S. does not challenge his other delinquency adjudications, so we dismiss the appeals numbered C-230483, C-230484, C-230485, and C-230486.

## I. Facts and Procedure

**{¶3}** One night in November 2022, J.S., T.B., and S.H. were driven by T.B.'s grandmother to buy marijuana. With T.B. in the front passenger seat and J.S. in the back, the three teenage boys were improvising rap lyrics. Based on a possible misunderstanding, T.B. became offended and took several swings at J.S. When his grandmother stopped at a red light, T.B. got out of the car, ran to J.S.'s door, opened it, and attempted to pull J.S. out. In response, J.S. fired multiple gunshots at T.B., striking him three times.

**{¶4}** In five juvenile complaints, the state alleged that J.S. was delinquent for acts that, if committed by an adult, would constitute felonious assault with firearm specifications, using a weapon while intoxicated, carrying a concealed weapon, possessing a defaced firearm, and receiving stolen property with an accompanying firearm specification.

2

*Adjudication hearing*

{¶5} T.B. testified that he is 6'1" tall and weighs 265 pounds. He testified that his grandmother drove J.S., S.H., and him "to go get weed." They "were on the way back" when T.B. thought that he heard an errant comment from J.S. about T.B.'s sister. According to T.B., he punched J.S. "one time" while in the car. T.B. ran around the outside of the car and opened J.S.'s door. T.B. recalled that J.S. said, "[C]ome on let's go we can do it right here." Unbeknownst to T.B., J.S. had a gun with him in the car. But T.B. did know that J.S. had recently acquired bullets for a gun because T.B.'s grandmother purchased them a few days before the shooting.

{¶6} T.B. estimated that J.S. fired his weapon somewhere between five and ten times. All told, T.B. sustained gunshot wounds in his right arm, left arm, and abdomen. T.B. testified that J.S. "was shooting me while I was running." T.B. believed that he "got hit in my backside while I was running." T.B. fled "down the opposite side of the road" until his grandmother caught up to him and took him to a hospital.

{¶7} S.H. described sitting next to J.S. in the back seat when the altercation occurred. According to S.H., T.B. punched J.S. more than once, though later he testified that T.B. "tried to hit [J.S.] in the face, but I don't know if it like connected, but he kept trying to hit him." S.H. recalled that T.B. opened J.S.'s door and was "still like hitting [J.S.], trying to get him out, and that's when he pulled out the gun" and shot T.B. S.H. could not recall how many shots were fired or if J.S. pursued T.B.

{¶8} Several officers testified at the adjudication hearing. Relevant here, officers described interviews with T.B. and J.S. at the police station. The state played footage of their interview with J.S., who told the officers that he was recovering from T.B.'s punch and "couldn't do nothing else," so he leaned back and "BOOM, BOOM."

3

J.S. explained to the officers that T.B. started running "and I just kept shooting him, I don't know why, I just didn't stop until the gun stopped."

{¶9}   One officer explained, with the help of photographs in the evidence, that T.B.'s shirt had three bullet holes, with one bullet hole on the lower back of the shirt. Another officer testified that investigating officers found seven shell casings that were confined to "generally the same areas."

{¶10}  In his defense, J.S. testified that T.B. landed several punches while in the car. According to J.S., T.B. "hopped out the car and was running. I'm scared, I don't know what's going on. He's angry. He's just furious. He's running to the car, opened up the door and tries to grab me, and I leaned back, and I shot." J.S. explained that he had seen T.B. this angry in the past and knew from his facial expression that T.B. "was heated," and in this state he "just don't care, he just do whatever." He felt a need to protect himself "because I seen [sic] him do things." So, J.S. closed his eyes and fired the gun. J.S. denied chasing after T.B. and could not recall whether he emptied the magazine of the gun. During cross-examination, J.S. acknowledged that he had taken ecstasy earlier in the day and "was coming down" when he shot T.B.

### *The magistrate and juvenile court rejected J.S.'s self-defense claim*

{¶11}  The magistrate found that J.S. caused physical harm to T.B. with the use of a deadly weapon and adjudicated J.S. delinquent. Relevant here, the magistrate found that J.S.'s "undisputed shooting of the victim multiple times (striking the victim in 3 different places upon his body) while youth was under the influence of drugs, did not establish a valid self-defense and was not a justifiable response to the situation."

{¶12}  J.S. filed objections to the magistrate's decision and the juvenile court held a hearing on his objections. J.S. argued that "the law says that if you're in a car, of course, there's a presumption that it's self-defense," and the state failed to rebut

that presumption. For its part, the state argued that J.S. was at fault and lacked a bona fide belief that he was in imminent danger.

{¶13} The juvenile court denied J.S.'s objection to the felonious-assault adjudication. It recited the burden-shifting framework for self-defense claims under R.C. 2901.05(B), its standard of review, and the elements of a self-defense claim. The juvenile court found that the state "disproved the second element" and therefore successfully rebutted J.S.'s claim of self-defense. Specifically, the juvenile court found that "the testimony showed J.S. continued shooting at T.B. as T.B. was running" and "J.S. repeatedly stated that he did not think that T.B. had a firearm" during the fight. Based on those findings, "a greater degree of force was used than objectively or subjectively necessary under all the circumstances." Rather, "the level of force used by J.S. in shooting T.B. was disproportionate to the perceived threat." Because "the state overcame the presumption of self-defense," the juvenile court found that "J.S. is liable for the offense of felonious assault."

{¶14} J.S. appealed his felonious-assault adjudication, raising three assignments of error. He filed separate notices of appeal for his delinquency adjudications for using a weapon while intoxicated, carrying a concealed weapon, possessing a defaced firearm, and receiving stolen property. But he makes no arguments related to those delinquency adjudications, so we dismiss the appeals numbered C-230483, C-230484, C-230485, and C-230486.

## II.  Law and Analysis

{¶15}  In three assignments of error, J.S. challenges the juvenile court's finding that the state rebutted his self-defense claim under R.C. 2901.05(B). First, he argues that the juvenile court misapplied the self-defense statute and applied what he describes as "an improper standard for self-defense." Second, he argues that the

juvenile court erred when it determined that he used more force than necessary and was not at risk of great bodily harm. Finally, he argues that his adjudication is against the manifest weight of the evidence because the juvenile court's "decision is a serious miscarriage of justice."

{¶16} "We review de novo whether the trial court applied the proper legal standard" when it considered J.S.'s self-defense claim. *State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 5. Because J.S. made an initial showing of self-defense, the burden of persuasion shifted to the state to "prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another." *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49, citing R.C. 2901.05(B)(1). When the burden shifts to the state, it must "disprove at least one of the elements of self-defense." *State v. Wilson,* 1st Dist. Hamilton No. C-210535, 2022-Ohio-3801, ¶ 10.

{¶17} The juvenile court found that the state satisfied its burden of persuasion and successfully rebutted J.S.'s self-defense claim. We review whether the state met its burden of persuasion under a manifest-weight-of-the-evidence standard. *In re J.P.,* 1st Dist. Hamilton Nos. C-220647 and C-220648, 2023-Ohio-4816, ¶ 16. To determine whether the juvenile court's finding is contrary to the manifest weight of the evidence, we review " ' " 'the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [juvenile court] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " ' " *Id.* at ¶ 17*,* quoting *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717

6

(1st Dist.1983).

**{¶18}** The law allows a person to use deadly force in self-defense when: (1) the defendant was not at fault in creating the circumstances that caused the altercation; (2) the defendant had a reasonable basis to believe, and honestly believed—even if mistaken, that he was in imminent danger of death or great bodily harm and could not escape without using such force; and (3) the defendant did not violate a duty to retreat. *Smith,* 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, at ¶ 48, citing *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). At issue is the second element of J.S.'s self-defense claim.

**{¶19}** J.S. first argues that the juvenile court ignored the fact that the magistrate employed the wrong standard in its review of the magistrate's decision. The magistrate failed to identify the elements of a self-defense claim and Ohio's burden-shifting framework for analyzing a self-defense claim. Instead, the magistrate simply found that J.S. "did not establish a valid self-defense and [his conduct] was not a justifiable response to the situation."

**{¶20}** But the juvenile court conducted an independent analysis of the facts and law. Its decision departs from the magistrate's finding that J.S. failed to establish a valid self-defense claim. The juvenile court explained that the second element has an "implicit requirement that the use of force was in good faith, which requires that the degree of force was warranted under the circumstances and proportionate to the perceived threat." *See State v. Hare,* 11th Dist. Ashtabula No. 2022-A-0048, 2023-Ohio-1623, ¶ 22; *see also State v. Johnson,* 8th Dist. Cuyahoga No. 110673, 2022-Ohio-2577, ¶ 15. The juvenile court found that J.S.'s force was unnecessary and disproportionate, as the evidence "showed J.S. continued shooting at T.B. as T.B. was

7

running" and that "J.S. fired multiple shots, hitting T.B. multiple times, even though he did not believe T.B. was armed."

{¶21} Nevertheless, J.S. challenges the juvenile court's analysis of his self-defense claim. While he claims that the juvenile court "used an improper standard for self-defense," he fails to identify where the juvenile court erred in its legal discussion and analysis. The juvenile court's explanation of the second element of a self-defense claim is consistent with the law in the First District and across Ohio.

{¶22} "[T]he second element of self-defense is a combined subjective and objective test." *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). A defendant must have a reasonable belief that "he was in immediate danger of death or great bodily harm." *State v. Mitchell*, 2023-Ohio-2604, 222 N.E.3d 156, ¶ 24 (1st Dist.), citing *Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, at ¶ 56. To use lethal force, " ' "the perceived threat to the accused must be of death or great bodily harm." ' " *Id.* at ¶ 25, quoting *State v. Sims,* 8th Dist. Cuyahoga No. 85608, 2005-Ohio-5846, ¶ 16, quoting *State v. Dietz*, 8th Dist. Cuyahoga No. 81823, 2003-Ohio-3249, ¶ 10. Further, "the defendant must have an honest belief that [he] sat in such danger." *Wilson,* 1st Dist. Hamilton No. C-210535, 2022-Ohio-3801, at ¶ 13. To assess that belief, the juvenile court was required to consider the totality of the circumstances to determine whether J.S.'s actions were warranted under the circumstances. *In re J.P.,* 1st Dist. Hamilton Nos. C-220647 and C-220648, 2023-Ohio-4816, at ¶ 22, quoting *In re B.M.,* 1st Dist. Hamilton No. C-170103, 2018-Ohio-1733, ¶ 12.

{¶23} It is well established that when a person uses deadly force in self-defense, that force must be reasonably proportionate to the threat. *State v. Terry*, 1st Dist. Hamilton No. C-220379, 2023-Ohio-2074, ¶ 15; *see State v. Williford,* 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990) ("The defendant is privileged to use that force

8

which is reasonably necessary to repel the attack."). Indeed, "within the second element of self-defense is a requirement that the defendant use no more force than is reasonably necessary to repel the attack." *In re J.P.* at ¶ 25.

{¶24} J.S. also argues that his belief in imminent danger was objectively reasonable and that his use of force was proportionate to that perceived danger, because T.B. is larger than J.S. and punched J.S. several times. J.S. appears to argue that, because "the act of delivering multiple punches, in succession, to another's head may rise to the level of deadly force," it was objectively reasonable to believe that multiple punches from T.B. would result in death or great bodily harm.

{¶25} We have held that self-defense law distinguishes only between deadly force and nondeadly force, not between weapons used for defense. *State v. Miller*, 149 Ohio App.3d 782, 2002-Ohio-5812, 778 N.E.2d 1103, ¶ 6 (1st Dist.). Moreover, if a person justifiably uses deadly force in self-defense, the choice of weapon is largely irrelevant. *Id.* And we have reversed convictions where the defendant used deadly force against an unarmed assailant. *See Bumpus,* 1st Dist. Hamilton No. C-020776, 2003-Ohio-4307, at ¶ 11 (the undisputed facts showed that the victim, a member of the Air Force who was two years older than the defendant and outweighed the defendant by 45 pounds, was "grabbing [Bumpus]'s throat, choking him, and all the while pummeling his head.").

{¶26} But in this case, there was conflicting testimony about how many times T.B. punched J.S. T.B. testified that he hit J.S. once, S.H. equivocated about whether T.B. hit J.S., and J.S. testified that T.B. "was punching me." The juvenile court found that J.S. knew that T.B. was unarmed and shot at T.B. while he was running away. These findings are consistent with J.S.'s statements to the police. And " '[w]hen evidence is susceptible to more than one construction, a reviewing court must give it

the interpretation that is consistent with the judgment.' " *State v. Jordan*, 1st Dist. Hamilton No. C-210603, 2022-Ohio-2566, ¶ 60, quoting *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20.

**{¶27}** Moreover, in recent years we have "rejected a manifest-weight challenge where the defendant stabbed an unarmed assailant who was strangling the defendant." *In re J.P.,* 1st Dist. Hamilton Nos. C-220647 and C-220648, 2023-Ohio-4816, at ¶ 25, citing *Jordan* at ¶ 60. And in *Jordan* we reasoned that the defendant's use of deadly force was disproportionate and "more force than was necessary when [the defendant and victim] were engaged in a fist fight or tussle." *Jordan* at ¶ 60. Other courts have held that a conviction is not against the manifest weight of the evidence, and "a defendant's use of force was unjustified[,] where individuals were engaged in what was 'essentially a fist fight,' but the defendant then shot one of those individuals." *State v. Knowlton*, 11th Dist. Ashtabula No. 2023-A-0013, 2023-Ohio-3759, ¶ 26 (collecting cases). The altercation in this case is closer to the "fist fight or tussle" in *Jordan* than the "pummeling" in *Bumpus.*

**{¶28}** Still more, J.S. cannot overcome the juvenile court's finding that he continued shooting as T.B. ran away. In these circumstances, the caselaw is clear that "any threat of imminent danger abated once [the assailant] began to flee." *State v. Mitchell,* 6th Dist. Lucas No. L-22-1166, 2023-Ohio-3543, ¶ 47; *see State v. Collins,* 10th Dist. Franklin No. 19AP-373, 2020-Ohio-3126, ¶ 42 (collecting cases).

**{¶29}** Following our reviewing the record, weighing the evidence, and considering the witnesses' credibility, we hold that this is not one of those rare cases in which the lower court clearly lost its way and created such a manifest miscarriage of justice that J.S.'s adjudication must be reversed. We overrule J.S.'s three assignments of error.

## III. Conclusion

**{¶30}** We overrule the three assignments of error and affirm the juvenile court's judgment in the appeal numbered C-230482. We dismiss the appeals numbered C-230483, C-230484, C-230485, and C-230486.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.